UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEFFREY JOHN WINN,

                         Plaintiff,

v.                                              5:15-CV-1126
                                                (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ                    PETER W. ANTONOWICZ, ESQ.
  Counsel for Plaintiff
148 West Dominick St.
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.                      JOSHUA L. KERSHNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 21.)  This case has proceeded in accordance with General

Order 18.

Currently before the Court, in this Social Security action filed by Jeffrey John

Winn ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 13, 20.)  For the reasons set forth

below, it is recommended that Plaintiff's motion be denied and Defendant's motion be

granted.

## I.     RELEVANT BACKGROUND

### A.     Procedural History

On March 19, 2012, Plaintiff applied for a period of Disability Insurance Benefits

("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the

Social Security Act.  (T. 61.)  Plaintiff's application was initially denied, after which he

timely requested a hearing before an Administrative Law Judge ("the ALJ").  On

November 26, 2013, Plaintiff appeared before the ALJ, David J. Begley.  (T. 31-59.)  On

March 11, 2014, ALJ Begley issued a written decision finding Plaintiff not disabled

under the Social Security Act.  (T. 14-30.)  On July 18, 2015, the Appeals Council ("AC")

denied Plaintiff's request for review, rendering the ALJ's decision the final decision of

the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this

Court.

### B.     The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and

conclusions of law.  (T. 19-26.)  First, the ALJ found that Plaintiff met the insured status

requirements through March 31, 2015 and Plaintiff had not engaged in substantial

gainful activity since June 30, 3009.  (T. 19.)  Second, the ALJ found that Plaintiff had

the severe impairments of diabetes, sleep apnea, shortness of breath, anxiety, history

of alcohol abuse in reported remission, and marijuana abuse in recent remission.  (*Id.*)

Third, the ALJ found that Plaintiff did not have an impairment that meets or medically

equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 20-21.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform: a full range of work at all exertional levels with additional non-exertional limitations.  (T. 21.)  The ALJ found that Plaintiff must avoid hazardous machinery and unprotected heights; he cannot climb ladders, ropes, or scaffolds; he is limited to simple, routine, and repetitive tasks; he requires a low stress job defined as having no fixed production quotas, no hazardous conditions and only occasional decision making; he can only have occasional changes in the work setting; and occasional interaction with coworkers, supervisors, and the general public.  (*Id.*)  Fifth, the ALJ determined that Plaintiff was capable of performing his past relevant work as a custodian.  (T. 25-26.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes four separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ committed reversible error because he failed to find that Plaintiff's mental impairments met and/or equaled the criteria of Listing 12.04, 12.06, and 12.09.  (Dkt. No. 13 at 9-13 [Pl.'s Mem. of Law].)  Second, Plaintiff argues that the ALJ's decision was not supported by substantial evidence because the ALJ relied on an erroneous evaluation of Plaintiff's daily activities.  (*Id.* at 13-16.)  Third, Plaintiff argues that the ALJ failed to comply with the Regulation in his evaluation of treating opinion evidence.  (*Id.* at 16-21.)  Fourth, and lastly, Plaintiff argues that the ALJ's RFC assessment failed to consider the impact of Plaintiff's mental health impairments as required by SSR 96-8p.  (*Id.* at 21-25.)

**B.    Defendant's Arguments**

In response, Defendant makes three arguments.  First, Defendant argues the ALJ's step three determination was supported by substantial evidence and the ALJ properly evaluated Plaintiff's activities of daily living.  (Dkt. No. 20 at 5-12 [Def.'s Mem. of Law].)  Second, Defendant argues that the ALJ's assignment of weight to the opinion evidence was supported by substantial evidence.  (*Id.* at 12-14.)  Third, and lastly, Defendant argues that the ALJ's mental RFC was supported by substantial evidence.  (*Id.* at 14-15.)

## III.    RELEVANT LEGAL STANDARD

**A.    Standard of Review**

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v.

Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be

sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In

other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.      Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this

sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct.

2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of

impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.   The ALJ's Step Three Determination

In general, if an ALJ determines that a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(a)(4)(iii)(d), 416.920(a)(4)(iii)(d). The impairments provided in the Listings are considered severe enough to prevent a plaintiff from doing any gainful activity.  *Id.* at §§ 404.1525(a), 416.925(a).  If a plaintiff's impairment, or combination of impairments, matches one listed in the Listings, and satisfies the duration requirement in 20 C.F.R. §§ 404.1509 and 416.909, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience.  *Id.* at §§ 404.1520(d), 416.920(d).

To match an impairment outlined in the Listings, a plaintiff's impairment "must meet all of the specified medical criteria" of a Listing.  *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.*  An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed

impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).  Although an ALJ may award

benefits at step three, a plaintiff who fails to prove his impairment matches or equals

one listed in the Listings is not denied benefits, but rather, the ALJ must proceed to step

four.  *See id.* at §§ 404.1520(e), 416.920(e).

To satisfy the criteria of Listings 12.04 or 12.06 Plaintiff must meet the

requirements of paragraph A and either paragraph B or paragraph C of the Listing.

Paragraph B of each of these Listings requires that Plaintiff demonstrate that his mental

impairment resulted in at least two of the following: (1) marked restriction of activities of

daily living; (2) marked difficulties maintaining social functioning; (3) marked difficulties

in maintaining concentration, persistence, or pace; or (4) repeated episodes of

decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Secs.

12.04(B), 12.06(B).  Listing 12.09, substance addiction disorders, relies on meeting one

of the other Listings, here Listings 12.04 or 12.06.  *Id.* at Sec. 12.09.

Or, in the alternative, paragraph C of Listings 12.04 requires a chronic affective

disorder of at least 2 years duration, with at least one of the following: (1) repeated

episodes of decompensation, each of extended duration; (2) a residual disease process

that resulted in such a marginal adjustment that even a minimal increase in mental

demands or change in the environment would be predicted to cause the individual to

decompensate; or (3) a current history of one or more years' inability to function outside

a highly supportive living environment.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec.

12.04(C).  Paragraph C of Listing 12.06 requires an anxiety-related disorder "[r]esulting

in complete inability to function independently outside the area of one's home."  *Id.* at

Sec. 12.06(C).

Here, the ALJ determined that Plaintiff did not meet Paragraph B or C criteria of the Listings and Plaintiff did not have repeated episodes of decompensation. (T. 21.) Specifically, the ALJ determined that Plaintiff had "mild" restriction in activities of daily living; "moderate" restrictions in social functioning; and "moderate" difficulties in concentration, persistence or pace. (T. 20-21.)

Plaintiff argues that his impairments met or equaled the criteria of Listings 12.04, 12.06, and 12.09. (Dkt. No. 13 at 9-16 [Pl.'s Mem. of Law].) Specifically, Plaintiff asserts that the ALJ erred in his evaluation of Plaintiff's activities of daily living because he erroneously stated Plaintiff traveled to the Philippines and composed music. (*Id.* at 9-10.) Plaintiff further argues that medical opinion evidence in the record supported greater restrictions in Plaintiff's social functioning. (*Id.* at 10-11.) Plaintiff also argues that he suffered episodes of decompensation. (*Id.* at 11-12.)

Plaintiff is correct in his assertion that the ALJ wrongly concluded that he travelled to the Philippines. (Dkt. No. 13 at 9 [Pl.'s Mem. of Law].) A review of the record supports Plaintiff's argument. (T. 522.) However, any error the ALJ made was harmless because in making his step three determination the ALJ did not solely rely on this erroneous reading of the record. The ALJ relied on other substantial evidence in the record to support his conclusion. Specifically, the ALJ relied on Plaintiff's hearing testimony that he was able to make meals, read, watch TV, go to group therapy and church weekly. (T. 20.) The ALJ also relied on Plaintiff's testimony that he did chores, went shopping, did laundry, used a computer, and was able to dress independently. (*Id.*) Therefore, despite the ALJ's error, substantial evidence supported his determination that Plaintiff had "mild" limitations in his activities of daily living. *Petrie v.*

*Astrue*, 412 F. App'x 401, 409 (2d Cir. 2011) (ALJ did not err in concluding plaintiff had mild restriction in activities of daily living where evidence in the record showed that plaintiff was able to dress, bathe, and groom himself on a daily basis, cook and prepare food, manage money, use public transportation, and perform general cleaning, laundry, and shopping).

Plaintiff also argues that the ALJ erred in concluding he composed music. (Dkt. No. 13 at 9 [Pl.'s Mem. of Law].) The ALJ stated that "[r]ecently" Plaintiff was noted as composing music. (T. 20.) Although notations from October 2013 indicated Plaintiff was no longer engaging in his hobbies, including music (T. 605-606), notations from December 2013 stated Plaintiff was composing music again (T. 611). At the hearing in November 2013 Plaintiff testified that he enjoyed playing the piano. (T. 47.) Therefore, the ALJ's statement that recent notations indicated Plaintiff was composing music was accurate. In the alternative, any error the ALJ may have made would be harmless because substantial evidence, as outlined above, supported the ALJ's determination that Plaintiff had mild restrictions in activities of daily living.[1]

Plaintiff argues that the ALJ "ignored" medical opinion evidence in the record which supported greater restrictions in the areas of social functioning and concentration. (Dkt. No. 13 at 10-11 [Pl.'s Mem. of Law].) Contrary to Plaintiff's argument, the ALJ did not ignore the medical source statement provided by Evan Deranja, M.D., Ph.D. The ALJ discussed Dr. Deranja's opinion in his RFC analysis and specifically afforded his opinion "limited weight." (T. 25.) Therefore, the ALJ did not ignore Dr. Deranja's opinion as Plaintiff alleges.

---

[1] Plaintiff reiterates the argument that the ALJ erred in his reliance on a trip to the Philippines and Plaintiff composing music in the second section of his brief. (Dkt. No. 13 at 13-16 [Pl.'s Mem. of Law].)

Plaintiff argues that the ALJ also "ignored" the medical source statement provided by Paula Zabrowksi, M.D. (Dkt. No. 13 at 11 [Pl.'s Mem. of Law].) Again, Plaintiff's assertion is without merit. The ALJ addressed Dr. Zabrowski's medical source statement in his decision and afforded her opinion "limited weight." (T. 25.) Therefore, the ALJ did not ignore Dr. Zabrowski's opinion.

Plaintiff argues that the ALJ "ignored" opinion evidence by the consultative examiner and treatment notes from Dr. Zebrowski; however, the ALJ thoroughly discussed these opinions in his determination; therefore, the ALJ did not "ignore" them. (Dkt. No. 13 at 12 [Pl.'s Mem. of Law]); *see* T. 22-23, 25.

In so far as Plaintiff argument, that the ALJ "ignored" treating physician opinion, could be read as an argument that ALJ failed to adopt their opinions, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Overall, substantial evidence supported the ALJ's determination that Plaintiff had "moderate difficulties" in social functioning. The ALJ relied on evidence in the record indicating Plaintiff was able to attend group therapy sessions and church on a weekly basis, use public transportation, had a relationship with his family and had friends in his apartment building. (T. 20-21.) Substantial evidence also supported the ALJ's determination that Plaintiff had "moderate difficulties" in concentration. (T. 21.) Although the ALJ again erroneously stated Plaintiff traveled to the Philippines, this error was harmless. Despite the error, medical evidence in the record supported the ALJ's ultimate conclusion regarding Plaintiff's ability to concentrate. As outlined by the Defendant, the medical opinions of the consultative examiner, Dr. Deranja, and Dr. Zebrowski supported the conclusion that Plaintiff retained the ability to maintain concentration for simple, routine, repetitive, low stress work. (Dkt. No. 20 at 9-10 [Def.'s Mem. of Law].) Therefore, substantial evidence supported the ALJ's determination that Plaintiff had moderate difficulties in concentration.

For the reasons state herein and further outlined in Defendant's brief, the ALJ did not ignore medical evidence in the record and the ALJ's determination that Plaintiff did not meet the paragraph B criteria of the Listing was supported by substantial evidence.

Plaintiff argues that the ALJ "completely ignored" evidence in the record which documented hospitalizations and evidence that Plaintiff had episodes of decompensation. (Dkt. No. 13 at 11-12 [Pl.'s Mem. of Law].) The Regulations define an episode of decompensation as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining

concentration, persistence, or pace" which are demonstrated by "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g. hospitalization, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.00(C)(4).

In support of his argument Plaintiff relies on hospital visits in June of 2010 and April of 2011. (Dkt. No. 13 at 11-12 [Pl.'s Mem. of Law].) First, neither hospital visit was caused by an exacerbation of Plaintiff's mental impairment. In June 2010, Plaintiff sought emergency room treatment due to diabetes, edema, and anemia. (T. 290.) In April of 2011, Plaintiff sought emergency room treatment for suspected methanol ingestion, acidosis, renal failure, hypotension, and elevated ammonia levels. (T. 332.) Second, neither visit met the durational requirement of at least two weeks. Lastly, even if the visits did qualify, there is no evidence that Plaintiff had the required three episodes of decompensation in one year. Therefore, the ALJ did not err in his conclusion that Plaintiff had no episodes of decompensation.

It is recommended that the ALJ's step three determination be upheld. Although the ALJ erroneously stated Plaintiff traveled to the Philippines, any error was harmless because substantial evidence supported his determinations. Further, the ALJ did not "ignore" medical evidence in the record.

### B.  The ALJ's Assignment of Weight to the Opinion Evidence in the Record and RFC Determination

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff received mental health treatment from various providers at Central New York Services. (T. 552-663.) Dr. Deranja, a psychiatrist with the practice, provided Plaintiff with medication management and counseling. (T. 586.) On November 26, 2013, Dr. Deranja completed a mental RFC assessment. (T. 518-520.) Therein, Dr. Deranja opined that Plaintiff was "moderately limited" in his ability to: remember locations and work-like procedures, and understand and remember very short and simple instructions. (T. 518.)[2] He opined that Plaintiff was "markedly limited" in his ability to understand and remember detailed instructions. (*Id.*)

In the area of concentration and persistence, Dr. Deranja opined that Plaintiff was "moderately limited" in his ability to: carry out very short and simple instructions;

---

[2]     The form completed by Dr. Deranja was SSA-4734; however, the form does not contain definitions of the terms used on the form such as "moderately limited" and "markedly limited." (T. 518.)

sustain an ordinary routine without special supervision; and make simple work-related decisions.  (T. 518.)  Dr. Deranja opined Plaintiff was "markedly limited" in his ability to: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; and complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (T. 518-519.)

In the area of social interaction, Dr. Deranja opined Plaintiff was "moderately limited" in his ability to: interact appropriately with the general public; get along with co-workers, or peers without distracting them or exhibiting behavior extremes; and maintain socially appropriate behavior and to adhere to basic stands of neatness and cleanliness.  (T. 519.)  He opined that Plaintiff was "markedly limited" in his ability to accept instructions and respond appropriately to criticism from supervisors.  (*Id.*)  Dr. Deranja stated Plaintiff was not significantly limited in his ability to ask simple questions or request assistance.  (*Id.*)

In the area of adaptation, Dr. Deranja opined Plaintiff was "moderately limited" in his ability to: respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently or others.  (T. 519.)  He opined that Plaintiff was not significantly limited in his ability to be aware of normal hazards and take appropriate precautions.  (*Id.*)

The ALJ afforded Dr. Deranja's statement "limited weight." (T. 25.) In support of his determination, the ALJ stated that Plaintiff received his primary treatment from other providers at Central New York Services, Dr. Deranja completed the form with Plaintiff, and the opinion was inconsistent with the record and Plaintiff's activities. (*Id.*)

Other providers with Central New York Services provided medical source statements as well. Paula Zebrowski, M.D. opined on November 1, 2012, that Plaintiff had mild limitations in his ability to understand, remember, and carry out simple instructions. (T. 476.)[3] She opined Plaintiff had mild limitations in his ability to make judgments on simple work-related decisions. (*Id.*) She opined Plaintiff had moderate to marked limitations understanding, remembering and carrying out complex instructions and making judgments on complex work-related decisions. (*Id.*) Dr. Zebrowski opined Plaintiff had a moderate limitation in his ability to interact appropriately with the public. (T. 477.) She opined Plaintiff had marked limitations in his ability to: interact appropriately with supervisors, interact appropriately with co-workers; and respond appropriately to usual work situations and to changes in a routine work setting. (T. 477.) She opined Plaintiff had an extreme limitation in his ability to respond appropriately to changes in a routine work setting. (*Id.*)

Phyllis Perrone, LCSW, opined on November 7, 2012, that Plaintiff had mild limitations in his ability to understand, remember, and carry out simple instructions. (T. 481.) She opined he had moderate limitations in his ability to make judgment on simple

---

[3]     Dr. Zebrowski and Ms. Perrone completed Form HA-1152-U3. (T. 476, 481.) The form defined "mild" as "a slight limitations . . . but the individual can generally function well." (T. 481.) The form defined "moderate" as "more than a slight limitations. . . but the individual is still able to function satisfactorily." (*Id.*) The form defined "marked" as a "serious limitation . . . a substantial loss in the ability to effectively function." (*Id.*) Finally, the form defined "extreme" as a "major limitation . . . no useful ability to function in this area." (*Id.*)

work-related decisions. (*Id.*) Ms. Perrone opined that Plaintiff had marked limitations in his ability to understand, remember, and carry our complex instructions. (*Id.*) She opined Plaintiff had an extreme limitation in his ability to make judgments on complex work-related decisions. (*Id.*) Ms. Perrone opined Plaintiff had moderate limitations in his ability to interact appropriately with the public; marked limitations in his ability to interact appropriate with supervisors and co-workers and respond appropriately to changes in a routine work setting; and an extreme limitation in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (T. 482.)

The ALJ afforded Dr. Zabrowski's and Ms. Perrone's statements "limited weight." (T. 25.) The ALJ reasoned that the opinions regarding Plaintiff's social restrictions and restrictions in understanding were inconsistent with Plaintiff's reported activities and inconsistent with examination findings of the consultative examiner, Christina Caldwell, Psy.D. (*Id.*)

On April 27, 2012, Dr. Caldwell performed a psychiatric evaluation of Plaintiff and provided a medical source statement. (T. 452-456.) On examination Dr. Caldwell noted that Plaintiff was cooperative and had overall adequate social skills. (T. 453.) Dr. Caldwell observed that Plaintiff's speech was fluent and his expressive and receptive language was adequate. (T. 454.) She observed Plaintiff's thought processes were coherent and goal directed. (*Id.*) Dr. Caldwell observed Plaintiff's affect as anxious, his mood as neutral, and his sensorium as clear. (*Id.*) She stated that his attention, concentration, and memory were intact. (*Id.*) Dr. Caldwell noted Plaintiff had average

intellectual functioning.  (*Id.*)  She noted his insight was fair to poor and his judgment was fair.  (*Id.*)

In a medical source statement, Dr. Caldwell opined that Plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, and learn new tasks.  (T. 455.)  Further, she opined that Plaintiff was limited in his ability to perform complex tasks independently, make appropriate decisions, relate adequately to others, and appropriately deal with stress.  (*Id.*)

Plaintiff argues that the ALJ erred in his assessment of Dr. Deranja's opinion because 1) the opinion was an "extremely accurate assessment" of Plaintiff's abilities, 2) the ALJ "punished" Plaintiff for seeking treatment, 3) Dr. Deranja treated Plaintiff on numerous occasions, and 4) the ALJ erroneously stated Plaintiff traveled to the Philippines.  (Dkt. No. 13 at 17-18 [Pl.'s Mem. of Law].)  Plaintiff further argues that the ALJ erred in his assessment of Dr. Zabrowski's and Ms. Perrone's opinions and erred in his reading of Dr. Caldwell's opinion.  (*Id.* at 19-21.)

Here, the ALJ properly adhered to the Regulations in affording weight to the opinion evidence in the record and substantial evidence supported the ALJ's determinations.  First, although Plaintiff asserts that Dr. Deranja's opinion provided an accurate assessment of his functional abilities, Plaintiff failed to provide any evidence in the record to support this contention.  (Dkt. No. 13 at 17 [Pl.'s Mem. of Law].)  Second, Plaintiff received treatment from multiple providers at Central New  York Services and the ALJ properly noted that Plaintiff did not receive his primary treatment with Dr. Deranja.  (T. 25); *see* 20 C.F.R. § 404.1527(c)(1)-(2), 416.927(c)(1)-(2).  Further, an

ALJ may provide less weight to a doctor's opinion because it was based largely upon the subjective statements of a plaintiff, who the ALJ had reasonably be less than fully credible. *Roma v. Astrue*, 468 F.App'x 16, 19 (2d Cir. 2012).

In addition, the ALJ concluded Dr. Deranja's opinion was inconsistent with the record. (T. 25.) Elsewhere in his determination the ALJ outlined medical evidence in the record which did not support greater mental limitations than accounted for in his RFC determination. (T. 23.) The ALJ relied on mental status examinations and medical evidence indicating Plaintiff treatment and medication significantly lessened Plaintiff's mental symptoms. (*Id.*) Indeed, despite the limitations in Dr. Deranja's opinion in the area of social interaction and concentration, the doctor's mental status examinations do not support such limitations.

On March 14, 2013, Dr. Deranja observed that Plaintiff's eye contact was appropriate, his behavior was pleasant and cooperative, his thought process was logical and goal directed, his mood was "pretty good," his affect was euthymic and full, and his insight and judgment were fair. (T. 663.) On July 1, 2013, Dr. Deranja observed that Plaintiff had appropriate eye contact, he was pleasant and cooperative, his speech was normal, his thought process was logical and goal directed, his mood was "ok," his affect was euthymic and full, and his insight and judgment were fair. (T. 621-622.) On July 30, 2013, Dr. Deranja observed that Plaintiff's appearance was appropriate, his eye contact was appropriate, he was pleasant and cooperative, his speech was normal, his thought process was logical and goal directed, his mood was "ok, a little more depressed," his affect was congruent, and his insight and judgment were fair. (T. 624.) On September 4, 2013, Dr. Deranja observed that Plaintiff was "less depressed than

previous, otherwise unchanged." (T. 627.) On October 29, 2013, Dr. Deranja noted that Plaintiff was "less depressed than previous" and that his medication was working. (T. 607.) Therefore, substantial evidence in the record, namely the findings of objective mental status examinations, supported the ALJ's determination to afford Dr. Deranja's statement limited weight. *See Stottlar v. Colvin*, No. 5:13-CV-00047, 2014 WL 3956628, at *16 (N.D.N.Y. Aug. 13, 2014) (ALJ properly afforded opinion that plaintiff "may have" difficulty understanding instructions and "may have" difficulty interacting appropriately with others little weight where mental status examinations revealed plaintiff's attention and concentration were intact, and plaintiff was cooperative, her manner of relating, social skills, and overall presentation were adequate).

The ALJ also specifically relied on Dr. Caldwell's mental status examination of Plaintiff, as well as Plaintiff's activities of daily living, in evaluating Dr. Deranja's medical source opinion. (T. 25.) Therefore, the ALJ properly adhered to the Regulations in affording weight to Dr. Deranja's opinion and his determination was supported by substantial evidence in the record as outlined herein.

Plaintiff argues that the ALJ erred in relying on Plaintiffs reported activities of daily living in weighing the opinions of Dr. Zabrowski and Ms. Perrone. (Dkt. No. 13 at 19-20 [Pl.'s Mem. of Law].) Here the ALJ properly relied on evidence in the record that was inconsistent with the opinions of Dr. Zabrowski and Ms. Perrone. The ALJ relied not only on Plaintiff's reported activities of daily living which required a degree of social interaction, such as going to church and group therapy, but also on the objective medical observations of Dr. Caldwell. (T. 25.) Again, the ALJ erred in stating Plaintiff traveled to the Philippines; however, any error was harmless because the ALJ did not

rely on this piece of information alone in making his determination and overall substantial evidence supported the ALJ's ultimate conclusion. Therefore, the ALJ properly weighed the medical opinion evidence provided by Dr. Zabrowski and Ms. Perrone.

Plaintiff argues that the ALJ erred in his conclusion that Dr. Caldwell's observations were "mild" because her notations indicated that Plaintiff had greater social limitations and Plaintiff was limited in his ability to perform complex tasks. (Dkt. No. 13 at 20-21 [Pl.'s Mem. of Law].) Although Dr. Caldwell's noted that Plaintiff reported he did not drive, does not take public transportation, and forces himself to socialize, she nonetheless opined that Plaintiff was capable of essentially simple, routine, low stress work. (T. 454.) Further, Plaintiff testified that he took public transportation to the hearing and usually gets around by public transportation. (T. 40.)

Dr. Caldwell opined that her medical source statement "appear[ed]" to be consistent with Plaintiff's allegations. (T. 454.) Plaintiff argues Dr. Caldwell's statement supports greater mental limitations. (Dkt. No. 13 at 20-21 [Pl.'s Mem. of Law].) Once again, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or argue that the evidence could support his positions. Here, Plaintiff has failed to show that no reasonable factfinder could have reached the ALJ's conclusion that Dr. Caldwell's examination of Plaintiff was "relatively mild." (T. 25); *see Brault,* 683 F.3d at 448. Dr. Caldwell's objective examination of Plaintiff could reasonably be classified as mild. Plaintiff, although anxious, was cooperative, presented adequately, was oriented, and had intact attention, concentration and memory. (T. 454.) Further,

Dr. Caldwell ultimately opined that despite Plaintiff's reported limitations he could still perform simple, routine, repetitive work.  (T. 455.)

Plaintiff then argues that the ALJ erred in relying on consultative examiner, Elke Lorensen, M.D. in evaluating Plaintiff's mental health limitations because Dr. Lorensen was not a mental health specialist.  (Dkt. No. 13 at 21 [Pl.'s Mem. of Law].)  However, the ALJ afforded Dr. Lorensen's opinion "substantial weight" regarding Plaintiff's physical limitations, not mental.  (T. 24, 25.)  Therefore, Plaintiff's argument is without merit.

Plaintiff asserts that the ALJ's RFC determination did not consider the impact of his mental health impairments.  (Dkt. No. 13 at 21-25 [Pl.'s Mem. of Law].)  Plaintiff argument largely restates his pervious argument, that the ALJ erred in his reliance on Plaintiff's activities of daily living.  (*Id.*)

A plaintiff's RFC is the most he can do despite his limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Further, a plaintiff's RFC is his maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis, and the RFC assessment must include a discussion of the plaintiff's abilities on that basis.  "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009).  In determining a plaintiff's RFC, the ALJ can consider a variety of factors, including a treating physician's or examining physician's observations of limitations, plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  Here,

the ALJ did not commit legal error in formulating his mental RFC determination and his mental RFC determination was supported by substantial evidence in the record.

As outlined above, the ALJ properly relied on the medical source statement of Dr. Caldwell which was consistent with the ALJ's mental RFC determination. Further, the ALJ's mental RFC determination was consistent with the opinions of Dr. Deranja, Dr. Zebrowski and Ms. Perrone. All three providers opined that Plaintiff could perform, remember, and carrying out simple instructions. (T. 476, 481, 518.)

The ALJ limited Plaintiff to only occasional interaction with co-workers, supervisors, and the general public. (T. 21.) Dr. Deranja, Dr. Zebrowski and Ms. Perrone all opined that Plaintiff had moderate limitations in his ability to interact appropriately with the public, which is consistent with the ALJ's limitations. (T. 477, 482, 519.) The ALJ did not fully credit the providers' opinions regarding Plaintiff's limitations in the area of social interaction because, as outline above, the ALJ concluded that such limitations were not supported by the record, including Dr. Caldwell's opinion and Plaintiff's reported activities of daily living. To be sure, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). As stated by Defendant, "this reflects careful consideration by the ALJ

not only of the opinion evidence, but of Plaintiff's self-reported activities, and the record as a whole."  (Dkt. No. 20 at 13 [Def.'s Mem. of Law].)

In sum, the ALJ properly assessed Plaintiff's mental impairments at step three of his determination.  Although the ALJ mistakenly read the record that Plaintiff traveled to the Philippines, this error was harmless because substantial evidence in the record supported his determinations at step three and four.  The ALJ also properly adhered to the Regulations in weighing the opinion evidence in the record and his weight determinations were supported by substantial evidence.  The ALJ made his mental RFC determination based on the medical opinion evidence in the record and other evidence in the record including Plaintiff's testimony.  Therefore, it is recommended that the ALJ's determination be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:       January 6, 2017

_____
William B. Mitchell Carter
U.S. Magistrate Judge